## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RESONANT SYSTEMS, INC. | |
|        Plaintiff, | |
| v. | Civil Action No. 2:22-CV-00423-JRG-RSP |
| SAMSUNG ELECTRONICS CO. LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | |
|        Defendants. | |

## DEFENDANTS' SUPPLEMENTAL RESPONSIVE CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 1

III.    LEVEL OF ORDINARY SKILL IN THE ART ................................................. 1

IV.     DISPUTED TERMS FOR CONSTRUCTION ..................................................... 2

        A.      "vibration module" ('081 and '830 patents, claims 1-8, 17) ................................. 2

        B.      Indefiniteness of claims 4-6 ('081 and '830 patents, claims 4-6) .......................... 3

        C.      "driving component that drives the moveable component [in each of two opposite
                directions/to oscillate] within the housing" ('081 and '830 patents, claim 1) ........ 6

        D.      "control component that controls supply of power from the power supply to the
                driving component to cause the moveable component to oscillate at a frequency
                and an amplitude specified by one or more stored values" ('830 patent, claim 1) . 7

                1.      Samsung's construction is adapted from other tribunals' constructions .... 8

                2.      The algorithm in Samsung's construction *is* the corresponding structure 11

                        a.      Section 112, ¶ 6 limits claims to the structure described in the
                                specification, not an estimation of the corresponding structure ... 11

                        b.      Samsung's construction includes all steps required to perform the
                                recited function of the "control component" ................................. 11

                        c.      Samsung's construction includes only the necessary steps for
                                performing the claimed function ................................................... 13

        E.      "control component that controls supply of power from the power supply to the
                driving component to cause the moveable component to oscillate at a frequency
                and an amplitude specified by user input received from the user-input features"
                ('081 patent, claim 1) ........................................................................................ 14

                1.      User control of the frequency of oscillation requires the algorithm depicted
                        in Figure 7B .......................................................................................... 15

                        a.      Performing the recited function requires each step in Samsung's
                                construction ............................................................................... 15

                        b.      Resonant's construction omits any way to change the frequency of
                                oscillation ................................................................................... 17

i

2.     For the reasons the Court articulated in *Sony*, the control component must be located within the vibration module .................................................... 18

3.     Resonant's focus on the number of steps is misguided ........................... 19

F.     "wherein the control component receives output signals from sensors within the [linear] vibration module during operation of the [linear] vibration module and adjusts one or more operational control outputs of the control component according to the received output signals from the sensors" ('081 and '830 patents, claim 3) ........................................................................................................ 19

1.     Resonant's "exemplary" steps fail to provide the jury with definitive guidance on the corresponding structure that performs the recited function ........................................................................................................... 21

2.     Resonant's algorithm is incomplete because it omits necessary steps and over-generalizes the specification ............................................................ 22

G.     "wherein the control component adjusts the one or more operational control outputs of the control component according to the received output signals from the sensors in order that subsequent operation of the [linear] vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters" ('081 and '830 patents, claim 4) ............. 24

H.     "wherein the one or more operational control parameters is a strength of vibration produced by the [linear] oscillation of the moveable component; and wherein the one or more operational control outputs is a frequency at which the control component drives the moveable component to [linearly] oscillate, the control component dynamically adjusting the power supplied to the driving component to produce [linear] oscillation of the movable component at a resonant frequency for the linear vibration module" ('081 and '830 patents, claim 5) ........................... 25

1.     The function includes the "wherein" clauses of claim 5 .......................... 26

2.     Resonant's algorithm omits necessary steps ............................................ 26

I.     "wherein the one or more operational control parameters include both a strength of vibration produced by the linear oscillation of the moveable component and a current operational mode; and wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to [linearly] oscillate" ('081 and '830 patents, claim 6) ........................................................................................................................ 27

1.     Claim 6's "wherein" clauses  modify claim 4's recited function ............. 27

2.    The Asserted Patents do not disclose corresponding structure for adjusting a control output that determines a current based on sensors' output signals ................................................................................................................ 28

J.    "wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to [linearly] oscillate" ('081 and '830 patents, claim 6) ........................................... 29

V.    RESONANT'S CITATIONS TO SAMSUNG'S IPRS ARE UNAVAILING ................ 30

VI.    CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aoyama*,
  656 F.3d 1293 (Fed. Cir. 2011)................................................................22

*Apple Inc. v. MPH Techs. Oy*,
  28 F.4th 254 (Fed. Cir. 2022) ...............................................................4

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006)..........................................................4, 6

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017)...............................................................24

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*,
  533 F.3d 1362 (Fed. Cir. 2008)...............................................................6

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013)...............................................................24

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.*,
  No. 2:15-CV-576, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) .......................................3, 6

*Estech Sys. IP, LLC v. Carvana LLC*,
  No. 2-21-CV-00482-JRG-RSP, 2023 WL 3681720 (E.D. Tex. Jan. 30, 2023) .....................30

*Finesse Wireless LLC v. AT&T Mobility LLC*,
  No. 2:21-CV-00316-JRG, 2022 WL 3686478 (E.D. Tex. Aug. 24, 2022)......................26, 28

*Gamevice, Inc. v. Nintendo Co.*,
  No. 18-CV-01942-RS, 2019 WL 3536986 (N.D. Cal. Aug. 2, 2019) .......................................5

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
  236 F.3d 1363 (Fed. Cir. 2001)...............................................................21

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005)...............................................................11

*Individual Network, LLC v. Apple, Inc.*,
  2009 WL 81795 (E.D. Tex. Jan. 12, 2009)................................................................11

*Intell. Ventures II LLC v. FedEx Corp.*,
  No. 2:16-CV-00980-JRG, 2017 WL 5896180 (E.D. Tex. Nov. 29, 2017)..............................21

*Ironworks Pats. LLC v. Samsung Elecs. Co.*,
    798 F. App'x 621 (Fed. Cir. 2020) ...................................................................21

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
    No. 2:22-CV-00282-JRG, Dkt. 176 (E.D. Tex. Oct. 14, 2023) ...........................30

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991) ........................................................................7

*Maxell Ltd. v. Huawei Device USA Inc.*,
    297 F. Supp. 3d 668 (E.D. Tex. 2018) ...................................................14, 16, 18

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015) ......................................................................28

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
    194 F.3d 1250 (Fed. Cir. 1999) ......................................................................13

*Microsoft Corp. v. Multi-Tech Sys.*,
    357 F.3d 1340 (Fed. Cir. 2004) ......................................................................18

*Nat'l Oilwell DHT, L.P. v. Amega W. Servs., LLC*,
    2019 WL 1787250 (E.D. Tex. Apr. 24, 2019) .............................................20, 29

*Noah Sys. Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ......................................................................22

*Novo Indus., L.P. v. Micro Molds Corp.*,
    350 F.3d 1348 (Fed. Cir. 2003) ........................................................................6

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ......................................................................24

*Philips N. Am., LLC v. Garmin Int'l, Inc.*,
    2024 WL 3824807 (Fed. Cir. Aug. 15, 2024) ....................................................11

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
    599 F.3d 1308 (Fed. Cir. 2010) ..................................................................23, 24

*Resonant Systems, Inc. v. Apple, Inc.*,
    No. 7-23-cv-00077, Claim Construction Memo. & Order, Dkt. 103 (W.D.
    Tex. Aug. 23, 2024) .................................................................................9, 11

*Resonant Systems, Inc. v. Sony Group Corp. et al.*,
    No. 2:22-CV-00424-JRG, Claim Construction Order, Dkt. 107 (E.D. Tex.
    Aug 28, 2024) ....................................................................................8, 18, 19

*White v. Dunbar*,
    119 U.S. 47 (1886) .................................................................................................. 10

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ................................................................. 7, 18, 24

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*,
    905 F.3d 1341 (Fed. Cir. 2018) ............................................................................ 3

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) .......................................................................... 18

*World Class Tech. Corp. v. Ormco Corp.*,
    769 F.3d 1120 (Fed. Cir. 2014) .......................................................................... 29

**Statutes**

35 U.S.C. § 112 ¶ 6 .............................................................................. *passim*

**Other Authorities**

*Apple Inc. v. Resonant Systems, Inc.*,
    IPR2024-00806, Institution Decision, Paper 11 (P.T.A.B. Oct. 15, 2024) ....................... 9, 12

*Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*,
    IPR2023-00992, Final Written Decision, Paper 47 (P.T.A.B. January 8, 2025) ........... 1, 23, 24

*Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*,
    IPR2023-00993, Final Written Decision, Paper 48 (P.T.A.B. January 8, 2025) .............. 1, 8, 9

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| Dkt. 69, Ex. 1 | U.S. Patent No. 9,369,081 ("'081 patent") |
| Dkt. 69, Ex. 2 | U.S. Patent No. 9,941,830 ("'830 patent") |
| Dkt. 69, Ex. 3 | Declaration of Dr. Richard Hooper, RevelHMI's claim construction expert ("Hooper Decl.") |
| Dkt. 69, Ex. 4 | Declaration of Dr. Clifton Forlines, Samsung's claim construction expert ("Forlines Decl.") |
| Dkt. 69, Ex. 5 | Deposition transcript of Clifton Forlines ("Forlines Tr.") |
| Dkt. 69, Ex. 6 | Dictionary of Computing, Sixth Ed., 146 (2010) (SAMRES_00053905) |
| Dkt. 69, Ex. 7 | Dictionary of Energy (2009) (SAMRES_00053908) |
| Dkt. 69, Ex. 8 | McGraw-Hill Concise Encyclopedia of Science & Technology, Sixth Ed., 983 (2009) (SAMRES_00053914) |
| Dkt. 69, Ex. 9 | Lowes webpage for "Tubes," https://www.lowes.com/pl/Tubes-Metal-rods-shapessheets-Hardware/2641124591, printed on Nov. 1, 2023 |
| Dkt. 69, Ex. 10 | Petition for *Inter Partes* Review of U.S. Patent No. 9,369,081 (IPR2023-00992, June 14, 2023) (excerpts) |
| Dkt. 69, Ex. 11 | Petition for *Inter Partes* Review of U.S. Patent No. 9,941,830 (IPR2023-00993, June 14, 2023) (excerpts) |
| Dkt. 99, Ex. 12 | Petition for *Inter Partes* Review of U.S. Patent No. 9,369,081 (IPR2023-00992, June 14, 2023) (additional excerpts) |
| Dkt. 99, Ex. 13 | Petition for *Inter Partes* Review of U.S. Patent No. 9,941,830 (IPR2023-00993, June 14, 2023) (additional excerpts) |
| Dkt. 99, Ex. 14 | Final Written Decision for *Inter Partes* Review of U.S. Patent No. 9,369,081 (IPR2023-00992, January 8, 2025) (excerpts) |
| Dkt. 99, Ex. 15 | Final Written Decision for *Inter Partes* Review of U.S. Patent No. 9,941,830 (IPR2023-00993, January 8, 2025) (excerpts) |
| Ex. 16 | Dictionary of Science and Technology, Second Edition (2007) (SAMRES_00053911) |
| Ex. 17 | The Wiley Electrical and Electronics Engineering Dictionary (2004) (SAMRES_00053926) |
| Ex. 18 | U.S. Pat. App. No. 13-345,607 (Pat. No. 8,860,337) File History (SAMRES_00014253) (excerpts) |
| Ex. 19 | U.S. Pat. App. No. 14-469,210 (Pat. No. 9,369,081) File History (REVEL00000032) (excerpts) |
| Ex. 20 | U.S. Pat. App. No. 15-181,249 (Pat. No. 9,941,830) File History (REVEL00000193) (excerpts) |
| Ex. 21 | U.S. Pat. App. No. 12-782,697 (Pat. No. 8,093,767) File History (SAMRES_00014036) (excerpts) |
| Ex. 22 | Errata to Deposition of Dr. Clifton Forlines |

vii

| Ex. 23 | *Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*, IPR2023-00992, Paper 47 (PTAB January 8, 2025) |
|---|---|
| Ex. 24 | *Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*, IPR2023-00993, Paper 48 (PTAB January 8, 2025) ("*Samsung IPR*") |
| Ex. 25 | *Resonant Systems, Inc. v. Sony Group Corp. et al.*, No. 2:22-CV-00424-JRG, Dkt. 62 (E.D. Tex. May 2, 2024); |
| Ex. 26 | *Resonant Systems, Inc. v. Apple, Inc.*, No. 7-23-cv-00077, Dkt. 79 (W.D. Tex. April 11, 2024) |
| Ex. 27 | *Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*, IPR2023-00992, Paper 26 (P.T.A.B. Apr. 15, 2024) |
| Ex. 28 | *Resonant Systems, Inc. v. Sony Group Corp. et al.*, No. 2:22-CV-00424-JRG, Dkt. 107 (E.D. Tex. Aug 28, 2024) ("*Sony*") |
| Ex. 29 | *Resonant Systems, Inc. v. Apple, Inc.*, No. 7-23-cv-00077, Dkt. 103 (W.D. Tex. Aug. 23, 2024) ("*Apple*") |
| Ex. 30 | *Apple Inc. v. Resonant Systems, Inc.*, IPR2024-00806, Paper 11 (P.T.A.B. Oct. 15, 2024) ("*Apple IPR*") |
| Ex. 31 | *Samsung Electronics Co. Ltd. et al. v. Resonant Systems, Inc.*, IPR2023-00992, Paper 46 (P.T.A.B. Oct. 10, 2024) |
| Ex. 32 | *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:22-CV-00282-JRG, Dkt. 176 (E.D. Tex. Oct. 14, 2023) |
| Ex. 33 | *Apple Inc. v. Resonant Systems, Inc.*, IPR2024-00806, Paper 16 (P.T.A.B. Feb. 7, 2025) |

## I.    INTRODUCTION

The disputed terms for the Court to construe fall into three categories. The first category is where the parties dispute the scope of the term(s). For example, Resonant asserts that a "vibration module" can be any device, whereas Samsung asserts this module must be incorporated into something else. The second category includes terms related to Resonant's request for judicial correction. The third category is construction of means-plus-function terms.

## II.    BACKGROUND

Resonant asserts U.S. Patent Nos. 9,369,081 (the "'081 patent") and 9,941,830 (the "'830 patent") (collectively the "Asserted Patents"). The Asserted Patents share a common specification[1] and relate to linear vibration modules and linear-resonant vibration modules.[2] '081 patent, Abstract. These modules are linear in that the vibrational forces are produced by a linear oscillation of a movable component within the module as opposed to eccentric rotation of an unbalanced weight. *Id.*, 4:17-23. Resonant asserts that Samsung infringes claims 3-6 of both patents.

## III.    LEVEL OF ORDINARY SKILL IN THE ART

The parties dispute the definition of a person of ordinary skill in the art ("POSITA"). Samsung proposes that POSITAs would have a bachelor's degree in electrical engineering, mechanical engineering, computer science, or a similar field and **two years of experience related to electronic consumer product design**. Forlines Decl. ¶ 18. This is the level of skill adopted by the PTAB in the IPR decisions. Ex. 23, 16-17; Ex. 24, 7.

The dispute is whether, as Resonant contends, the two years of professional experience must be with **electro-mechanical control systems** or similarly relevant industry experience. Dkt.

---

[1] For brevity, citations in this brief are to the '081 patent only unless otherwise noted.
[2] Samsung reserves the right to raise § 112 arguments because the '830 patent claims are not limited to "linear."

69, 2; Hooper Decl. ¶ 23. Resonant does not explain why Samsung's definition is wrong—nor why narrowing to "electro-mechanical control systems" is necessary. In contrast, as Dr. Forlines explained at his deposition, the technology of the Asserted Patents is "not overly sophisticated" and could be addressed by POSITAs with relevant consumer product design experience, even if that experience did not relate directly to mechanical systems. Forlines Tr., 23:20-24:1, 25:5-17.

## IV.    DISPUTED TERMS FOR CONSTRUCTION

### A.    "vibration module" ('081 and '830 patents, claims 1-8, 17)

| Resonant's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning | "a vibration-generating device that can be incorporated in a wide variety of appliances, devices, and systems to provide vibrational forces" |

The dispute boils down to what a "module" is. In Resonant's view, a module is unbounded and can be anything. In Resonant's infringement contentions, a phone that vibrates could be a "vibration module." Samsung's construction follows *Phillips* because the specification's use of the term is consistent with and informs the term's plain and ordinary meaning. In particular, the term "vibration module" is repeatedly and exclusively used throughout the specification to refer to devices "that can be incorporated in a wide variety of appliances, devices, and systems to provide vibrational force." '081 patent, Abstract ("modules, that can be incorporated…"), 3:7-10 (same), 1:16-18 ("modules that can be incorporated into a wide variety of different types of electro-mechanical devices and systems…"), 4:15-16 ("modules ('LRVMs'), that can be used within…").

The specification's description is consistent with dictionary definitions of "module" at the time of the invention. *See, e.g.*, Ex. 16, -913 (defining module as, *inter alia*, "a part that together with other parts makes up another structure or system" and "a self-contained piece of hardware that can be connected with other modules to form a new system."); Ex. 17, -928 (defining module as something that "can be incorporated into a complete system" or something that is "used within

2

a modular approach"). These definitions are consistent with how POSITAs would have understood "module" and with Samsung's construction. Forlines Decl. ¶¶ 35, 37. Indeed, Resonant's expert refers to vibration modules as "**in**" other devices. Hooper Decl. ¶ 9 ("[I]t is also not uncommon to find vibrating modules that produce haptic feedback **in** handheld-devices…").[3]

As to the language of Samsung's construction, though it is from the specification, it is not—as Resonant argues (*see* Dkt. 69, 3)—based on disclaimer or lexicography. Instead, it is simply language that is a reasonable articulation of the understood meaning, as used constantly throughout the patent. *See Wisconsin Alumni Rsch. Found. v. Apple Inc*., 905 F.3d 1341, 1351 (Fed. Cir. 2018)

### B.    Indefiniteness of claims 4-6 ('081 and '830 patents, claims 4-6)

| Claim Term | Resonant's Construction | Samsung's Construction |
|---|---|---|
| "claim 1" | "claim 3"; not indefinite | Plain and ordinary meaning |
| "the one or more operational control outputs" | Plain and ordinary meaning; not indefinite. | Indefinite/no antecedent basis |
| "the received output signals" / "the received output signals from the sensors" | Plain and ordinary meaning; not indefinite. | Indefinite/no antecedent basis |
| "the sensors" / "the one or more sensors" | Plain and ordinary meaning; not indefinite. | Indefinite/no antecedent basis |

Resonant argues that prior constructions of claim 4 changing the dependency from claim 1 to claim 3 ought to control. Dkt. 99, 4 (citing the *Sony* and *Apple* decisions). Resonant's request, however, contains no analysis addressing where in claims 1, 3, or 4 antecedent basis is provided for the claim term "the one or more sensors." Because there is reasonable debate as to how to resolve both the dependency and the lack of antecedent basis for this term, judicial correction is unavailable. *Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, No. 2:15-CV-576, 2016 WL 7364266, at *10 (E.D. Tex. Dec. 19, 2016) ("Judicial correction of an error in a patent may be available only

---

[3] All emphases are added unless otherwise noted.

3

if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." (quotation omitted)).

Resonant's original brief characterized the purported error in claim 4 as "a one-character typographical error." Dkt. 69, 5-8. Resonant made the same argument in the *Sony* and *Apple* litigations. Ex. 25 (Resonant's *Sony* CC Brief), 12-15; Ex. 26 (Resonant's *Apple* CC Brief), 22-23. In the *Samsung IPR*, Resonant's Patent Owner Response entirely ignored the term "the one or more sensors," referring only to the terms "the sensors" and "the one or more operational control outputs." Ex. 27 (*Samsung IPR* Patent Owner Response), 17-18. By ignoring the issue created by the lack of antecedent basis for the "one or more sensors" term, Resonant can characterize this as a "one-character error." But this is plainly not a "one-character error." Patentee wrote claim 4 to recite both "the sensors" and "the one or more sensors" in that order, and that choice must not be ignored. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("in the absence of any evidence to the contrary, we must presume that the use of … different terms in the claims connotes different meanings").

There are four terms in claim 4 that lack antecedent basis when the claim depends from claim 1: "the one or more operational control outputs," "the received output signals," "the sensors," and "the one or more sensors." Changing claim 4 to depend from claim 3 instead of claim 1 provides antecedent basis for "the one or more operational control outputs," "the received output signals," and "the sensors," but there still is no antecedent basis for "the one or more sensors." Indeed, even if claim 4 depends from claim 3, it is not clear what "the one or more sensors" refers to. None of the prior claim 4 constructions Resonant points to have addressed this. Dkt. 99, 4.

Claim 3 recites "sensors," which means there must be at least two sensors. *Apple Inc. v.*

4

*MPH Techs. Oy*, 28 F.4th 254, 261 (Fed. Cir. 2022). Claim 4 recites the plural "sensors," but also recites "one or more sensors," meaning there can be only one sensor. Thus, even if the Court were to change claim 4's dependency from "claim 1" to "claim 3" will not resolve the issues surrounding the term "the one or more sensors" recited in claim 4. To resolve the antecedent basis of that term would require additional modification to the claim language. For example, the Court could either (a) change the word "sensors" recited in claim 3 to "one or more sensors," as recited in claim 4, which would broaden claim 3, (b) change "the sensors" in claim 4 to "one or more sensors" to provide antecedent basis for the later-used term while separating claim 4's sensors from the "sensors" recited in claim 3, which means that the sensors in claim 4 are different from those in claim 3, (c) change "the one or more sensors" recited in claim 4 to "one or more sensors," i.e., remove the word "the" preceding the term, thereby breaking the need for antecedent basis and providing for two sets of sensors in the claim, or (d) change "the one or more sensors" recited in claim 4 to "the sensors," effectively reading "one or more" out of the claim. The dependency of claim 4 cannot be judicially corrected without adopting one of these interpretations to resolve the antecedent basis issue of "the one or more sensors," and it is not at all clear which of these four interpretations would be correct. Thus, claim 4 cannot be judicially corrected. *Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2019 WL 3536986, at *3 (N.D. Cal. Aug. 2, 2019) (rejecting the request to judicially correct a claim term where "ambiguity could be resolved by at least three plausible modifications to the language of the claims").

Further complicating the analysis, claim 4 introduces "**one or more** operational control parameters" that "correspond[] to" "the **one or more** sensors." In contrast, nothing in claims 1 or 3 (or "the sensors" recited in the first part of claim 4) recites any relationship between a sensor and an operational control parameter. On its face, then, "the one or more sensors" in claim 4 appear to

be distinct from the "sensors" of claims 3 and 4 because "the sensors" do not necessarily correspond to the claimed one or more operational control parameters. Indeed, the output of "the sensors" are expressly used to adjust operational control outputs, whereas the output of "the one or more sensors" expressly "correspond[] to one or more operational control parameters." The differences between how "the sensors" and "the one or more sensors" are used in claim 4 alone suggest the two are not one and the same. *See Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008); *Applied Med. Res. Corp.*, 448 F.3d at 1333 n.3.

Reasonable debate regarding both the dependency of claim 4 as well as the resolution of antecedent basis for the "one or more sensors" term prohibits judicial correction of claim 4. *Cellular Commc'ns*, 2016 WL 7364266 at *10. As a result, the plain and ordinary meaning of "claim 1" should apply. With this plain and ordinary meaning applied, various terms in claim 4 lack antecedent basis to the point of rendering claim 4 indefinite. *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1358 (Fed. Cir. 2003).

**C.    "driving component that drives the moveable component [in each of two opposite directions/to oscillate] within the housing" ('081 and '830 patents, claim 1)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 U.S.C. § 112 ¶ 6. | Subject to 35 U.S.C. § 112 ¶ 6. |
| **Function**: driving the moveable component [in each of two opposite directions/to oscillate] within the housing | **Function**: driving the moveable component [in each of two opposite directions/to oscillate] within the housing |
| **Structures**: One or more coils or electromagnets. E.g., '081 and '830 Patents, Figs 4A-4G (coil 420); Fig. 5A (coil 514), Fig. 6 (coil 626), electromagnet of Fig. 10, electromagnet of Fig. 11, Fig. 12 (coil 1206), Fig. 13 (first coil 1302 and second coil 1304), Fig. 14 (coils 1412 and 1414), Figs. 15, 16 (coil 1510), stator coils of Figures 24A, 24B, and 25; and equivalents thereof | **Structure**: One or more electromagnetic coils. E.g., '081 and '830 Patents, Figs. 4A-4G (coil 420), Fig. 5A (coil 514), Fig. 6 (coil 626), electromagnet of Fig. 10, electromagnet of Fig. 11, Fig. 12 (coil 1206), Fig. 13 (first coil 1302 and second coil 1304), Fig. 14 (coils 1412 and 1414), Figs. 15, 16 (coil 1510), stator coils of Figures 24A, 24B, and 25. |

The parties agree that this is a means-plus-function term. The dispute is whether—as

Resonant incorrectly contends—the structure includes "electromagnets" that are not coils. It does not. The Asserted Patents do not disclose embodiments of electromagnets except for coils. Even when the specification generically refers to "electromagnets" in describing the embodiments, it is clear that these electromagnets are coils. *See, e.g.*, '081 patent Figs. 10 and 11 (depicting the electromagnets as coils). Resonant does not identify any non-coil electromagnet embodiments but points to "catch-all" disclosure at the end of the specification containing the word "electromagnets." Dkt. 69, 14 (citing '081 patent, 15:1-5). Resonant may not identify corresponding structures that the patent does not disclose. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-48 (Fed. Cir. 2015); Forlines Tr., 82:11-18, 84:17-85:5 (explaining different control mechanisms are required for non-coil electromagnets).

Resonant also invokes claim differentiation. Dkt. 69, 14. Claim differentiation, however, cannot override the statutory limitation under § 112 ¶ 6. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). Moreover, claim 8 limits the driving component to an "electromagnetic coil" whereas Samsung's structure for claim 1 is broader ("one **or more** electromagnetic coils").

D.    **"control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values" ('830 patent, claim 1)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 USC § 112 ¶ 6 | Subject to 35 USC § 112 ¶ 6 |
| **Function**: controlling supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by one or more stored values | **Function**: same as Resonant |
| **Structure**: a microcontroller, a processor, a CPU, or a microprocessor contained within the vibrating module where the microcontroller, processor, CPU, or microprocessor are programmed with an algorithm comprising the following steps: (a) set the mode and strength to [default values or] values representing selections made by user input to the user | **Structure**: a microcontroller, a processor, a microprocessor, or a CPU contained within the vibration module that performs the algorithm shown in Figure 7A excluding steps 710-712, and 718-724, with reference to all steps shown in Figure 7C, or the algorithm described in the corresponding text. |

7

| input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component and equivalents thereof. | See, e.g., '830 patent at 6:52-7:29, 7:31-7:34, 8:20-8:40, and equivalents thereof. |
|---|---|

The parties agree that "control component" of claim 1 of the '830 patent is a means-plus-function term and also agree on the claimed function. The parties disagree on the corresponding structure disclosed in the specification.[4] Instead of identifying the algorithm disclosed for performing the recited function, Resonant criticizes Samsung for "proposing § 112 ¶ 6 constructions that are wildly different from those it previously advanced…." Dkt. 99, 1. In reality, the bulk of Samsung's construction is adapted from another Article III court's construction—one that Resonant adopted in an IPR brought by Apple—and which corresponds exactly to the algorithm in the '830 patent corresponding to the recited function.

### 1.    Samsung's construction is adapted from other tribunals' constructions

The "control component" term of the '830 patent has been construed four times in four different proceedings. In *Sony*, this Court construed the term to require the two-step algorithm in Resonant's construction. Ex. 28 (*Sony* CC Order), 15-16. The *Sony* parties did not dispute the algorithm. The Court was only asked to resolve: (1) whether an algorithm is required, and (2) "whether the corresponding structure should be limited as to its location." *Id.*, 10. Because the algorithm was not disputed in *Sony*, the Court did not address it.

In the *Samsung IPR*, the PTAB similarly adopted this two-step algorithm, noting the algorithm proposed by the parties was "identical." Ex. 24, 11. The PTAB recognized "the '830

---

[4] For the '830 patent, Resonant agrees that the control component is "contained within the vibrating module." Dkt. 95-1, 20. To the extent Resonant changes its position, Samsung addresses this issue in Section IV.E.2. Note also that while Section III.C in Resonant's brief purports to address the "control component" element for both patents, its discussion appears to be limited to the '081 patent, as Samsung's construction for the "control component" recited in claim 1 of the '830 patent does not have 23 steps. Dkt. 99, 4-7.

patent includes as Figures 7A–7C 'control-flow diagrams' or algorithms that 'illustrate the control program, executed by the CPU, that controls operation of an LRVM.'" *Id.*, 12. The Board continued, finding the first step in the two-step algorithm was "supported by step 702 of Figure 7A" and the second step was "supported by steps 760 and 762 of Figure 7C." *Id.*

In the *Apple* district court case, the parties disputed the construction of the algorithm. Resonant proposed the same two-step algorithm it advances in this case, while Apple proposed "the algorithm shown in Figures 7A–C and described at 6:52–8:40." Ex. 29 (*Apple* CC Order), 33-34. The Western District of Texas adopted the following corresponding structure: "a microcontroller, a processor, a microprocessor, or a CPU that performs the algorithm shown in Steps 706 through 716 in Figure 7A, with reference to all steps shown in Figure 7B other than Step 734 and all steps shown in Figure 7C, or the algorithm described in the corresponding text, *see, e.g.*, 7:20-7:34, 7:42-7:52, 7:60-8:40, and equivalents thereof." *Id.*, 36-37, 31.

Most recently, in the Apple IPR challenging the '830 patent, the PTAB explained "[Resonant] proposes the same construction that the [Western District] has adopted in the Apple Litigation." Ex. 30 (*Apple IPR* Institution Decision), 13. In its Institution Decision, the PTAB recognized that the claimed function includes "caus[ing] the moveable component to oscillate at [both] a frequency and an amplitude specified by one or more stored values." *Id.*, 13. For frequency control, the PTAB pointed to steps 706 and 708 in Figure 7A (*id.*, 14-17), and for amplitude control, pointed to steps 760 and 762 in Figure 7C. *Id.*, 18-20. Accordingly, the PTAB's "reading of the '830 patent is in accord with the District Court's construction, and [the Board] adopt[ed] it for purposes of [its] Decision." *Id.*, 14. Samsung's construction is based on the *Apple* court's construction, *i.e.*, the same construction Resonant advocated for in the *Apple IPR*. *Id.*

Finally, Resonant's focus on Samsung switching its position at the eleventh hour is

9

unfounded for two additional reasons. Dkt. 99, 5. Samsung's original brief stated:

> To control amplitude, the algorithm of Figure 7C sets a variable 'strength' to the currently selected strength and outputs a value 'p' to the power supply so that the power supply 'outputs an appropriate current to the coil.' … The patents disclose that frequency is controlled separately in algorithms illustrated in Figures 7A-B through manipulation of the 'freq' variable and the 'd' control output.

Dkt. 74, 21-22. Samsung's construction explicitly identifies steps from Figs. 7A and 7C in line with the way the *Apple* court did.[5] That is, Samsung's change was based on the intervening ruling on construction by an Article III court.

Second, and in contrast, Resonant itself changed its position in the *Apple IPR*, where it encouraged the PTAB to adopt the *Apple* court's construction. Now, barely three months later, Resonant flip-flops back to its overly broad interpretation — without any basis, except for litigation strategy. Indeed, the case Resonant cites against Samsung actually applies to Resonant as, unlike for Samsung, there was no intervening reason for the change. Dkt. 99, 7 (citing *White v. Dunbar*, 119 U.S. 47 (1886)). In *White*, a patentee attempted to "enlarge[]" its patent claims to cover its competitor's shrimp-preservation method. *White*, 119 U.S. at 48, 50. The Supreme Court rejected the patentee's attempt, explaining the patentee was treating the claim "like a nose of wax … so as to make it include something more than, or something different from, what [the specification's] words express." *Id.*, 51-52.

The *Apple* court considered the algorithm disclosed in the specification and construed claim 1 accordingly. Samsung's construction, adapted therefrom, recites the steps the patent discloses are necessary to perform the recited function.

---

[5] Resonant states that "none of the 23 steps in this new proposal corresponds to the disputed third step of Samsung's original proposal ('provide a corresponding output to the driving component)." Dkt. 99, 6. Resonant is wrong, as Step 762, which is included in Samsung's construction, "computes an output value p corresponding to the currently selected strength, stored in the variable strength, and outputs the value p to the power supply *so that the power supply outputs an appropriate current to the coil*." '830 patent at 8:26-30.

### 2.    The algorithm in Samsung's construction *is* the corresponding structure

#### a.    Section 112, ¶ 6 limits claims to the structure described in the specification, not an estimation of the corresponding structure

35 U.S.C. § 112, ¶ 6 requires that means-plus-function elements "be construed to cover the corresponding structure … described in the specification and equivalents thereof." Courts repeatedly hold that the structure corresponding to the function recited in a computer-implemented means-plus-function element is the **specific** algorithm disclosed in the patent. *Individual Network, LLC v. Apple, Inc.*, 2009 WL 81795, at *8 (E.D. Tex. Jan. 12, 2009) ("…reference to the patent specification to identify *specific algorithms* the computer is programmed to perform may be done with explicit reference to text or figures in the specification…."); *see also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) (rejecting a broad means-plus-function construction in favor of the specific algorithms disclosed in the specification) (citing *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999)).

Samsung's construction for the "control component" of claim 1 accurately reflects the "corresponding structure, material, or acts *described in the specification*" by referring to the structure exactly as it appears therein. 35 U.S.C. § 112, ¶ 6 (pre-AIA). Indeed, as discussed in Section IV.D.2.b below, Samsung's construction recites the specific (and only disclosed) algorithm. In contrast, as noted by the *Apple* court, Resonant's construction is "***derived*** from the intrinsic evidence," and as a result obfuscates the corresponding structure. Ex. 29 (*Apple* CC Order), 29. This violates the *quid pro quo* of functional claiming. *Philips N. Am., LLC v. Garmin Int'l, Inc.*, 2024 WL 3824807, at *4 (Fed. Cir. Aug. 15, 2024) (quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1219 (Fed. Cir. 2003)).

#### b.    Samsung's construction includes all steps required to perform the recited function of the "control component"

The function of the "control component" recited in claim 1 of the '830 patent is "controlling

supply of power from the power supply to the driving component to cause the moveable component to oscillate at a <u>frequency</u> and an <u>amplitude</u> specified by <u>one or more stored values</u>." Dkt. 95-1, 20. The '830 patent explains that frequency and amplitude are controlled by variables "freq" and "strength," which respectively control outputs "d" (described as "the control output to the H-bridge switch") and "p" (described as an output value "corresponding to the currently selected strength"). '830 patent at Figs. 7A, 7C, 7:1-2, 7:11-16, 7:23-29, 8:26-30. Outputs "d" and "p" specify the claimed "frequency and [] amplitude" at which the moveable component is meant to oscillate. *Id.*; *see also* Ex. 30 (*Apple IPR* Institution Decision), 13-20.

The values of "freq" and "strength" are set and stored in step 702. '830 patent at Fig. 7A, 6:60-7:3. "Next, in step 704, the control program waits for an event." *Id.*, 7:3-4. This triggers the control program to loop through a series of event handlers beginning with step 706. *Id.*, 7:4-11, 7:20-23. In step 706, the control program determines whether a frequency timer has expired. *Id.*, 7:20-24. The interval of the frequency timer is determined by the value of the variable "freq," which is set in step 702. *Id.*, 6:66-7:1, 7:27-29. When the frequency timer expires, the value of output "d" is flipped and the frequency timer is reset. *Id.*, 7:23-27. Using steps 702-708, the control program causes the moveable component <u>to oscillate at a frequency specified by stored value for "freq,"</u> just as required by the claimed function. The '830 patent does not disclose any other algorithm for controlling the frequency of oscillation.

The '830 patent further discloses that "when the event corresponds to a change in the user input through the user interface, as determined in step 714, the routine 'control' is called in step 716." *Id.*, 7:29-34. This routine is described in Figure 7C. *Id.*, Fig. 7C, 8:20-21. In this routine, "variables mode and strength are set to the currently selected mode and vibrational strength, represented by the current states of control features in the user interface" in step 760. *Id.*, 8:21-26.

Both "mode" and "strength" are initially set and stored in step 702. *Id.*, 6:60-65. "Next, in step 762, the routine 'control' computes an output value p corresponding to the currently selected strength, stored in the variable strength, and outputs the value p to the power supply so that the power supply outputs an appropriate current to the coil." *Id.*, 8:26-30. Thus, steps 760-762 <u>cause the moveable component to oscillate at an amplitude specified by the stored value for "strength,"</u> just as required by the claimed function. The '830 patent does not disclose any other algorithm for controlling the amplitude of oscillation. Finally, in step 764, the control program "computes a new monitor timer interval and resets the monitor timer accordingly" before returning to the loop described in Figure 7A. *Id.*,8:30-32.

In sum, to perform the function recited for the "control component" of claim 1 of the '830 patent, the structure must perform each of the steps described above, namely, the algorithm shown in Figure 7A excluding steps 710-712, and 718-724, with reference to all steps shown in Figure 7C, or the algorithm described in the corresponding text.

> ### c.    Samsung's construction includes only the necessary steps for performing the claimed function

There are two differences between Samsung's construction and the construction adopted by the *Apple* court. First, Samsung excludes the steps depicted in Figure 7B.[6] The '830 patent provides a means to operate the vibration module according to stored values, namely those set and stored in step 702. Therefore, the steps depicted in Figure 7B are not required to perform the function recited for the "control component" of claim 1 of the '830 patent when operating the vibration module according to those stored values. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (noting§ 112, ¶ 6 does not "permit incorporation of structure

---

[6] The steps described in Figure 7B are necessary to perform the function recited for the "control component" in claim 1 of the '081 patent, as discussed in section IV.E.1.

13

from the written description beyond that necessary to perform the claimed function.").

Second, Samsung's construction includes steps 702 and 704. Discussed above, step 702 is necessary to perform the claimed function because this is the step where the "stored values" used in the later steps are set and stored. *Id.*, 6:60-7:3 ("In step 702, various local variables are set to default values…."). For example, values for variables "freq" and "strength" are set in step 702, which then permits computation of outputs "d" and "p" using the steps recited in Samsung's construction from Figures 7A and 7C (and described in the corresponding text). Step 704 triggers the loop of the control program, and is thus necessary for the control program to ever reach any other step, including those in Figure 7C. *Id.*, 7:3-7; *see also Maxell Ltd. v. Huawei Device USA Inc.*, 297 F. Supp. 3d 668, 744 (E.D. Tex. 2018) (rejecting the plaintiff's attempt to "pick and choose" steps of the algorithm and holding "[t]he algorithm that corresponds to the claimed function includes the entire algorithms of Figures 4 and 9."). Thus, the necessary, corresponding structure for the '830 patent includes steps 702 and 704 as described in the specification.

In sum, Samsung's construction includes only those steps that are necessary to perform the function recited for the "control component" in claim 1 of the '830 patent, and should be adopted.

**E.** **"control component that controls supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by user input received from the user-input features" ('081 patent, claim 1)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 USC § 112 ¶ 6 | Subject to 35 USC § 112 ¶ 6 |
| **Function**: controlling supply of power from the power supply to the driving component to cause the moveable component to oscillate at a frequency and an amplitude specified by user input received from the user-input features | **Function**: same as Resonant |
| **Structure**: a microcontroller, a processor, a CPU, or a microprocessor where the microcontroller, processor, CPU, or microprocessor are programmed with an algorithm comprising the following steps: (a) set the | **Structure**: a microcontroller, a processor, a microprocessor, or a CPU contained within the vibration module that performs the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and |

| | |
|---|---|
| mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding output to the driving component and equivalents thereof. | all steps shown in Figure 7C, or the algorithm described in the corresponding text. See, e.g., '081 patent at 6:43-7:24, 7:32-7:42, 7:50-8:30, and equivalents thereof. |

The parties agree that "control component" recited in claim 1 of the '081 patent is a means-plus-function term and agree on the claimed function, which includes "caus[ing] the moveable component to oscillate at a <u>frequency and an amplitude specified by user input</u>...." The requirement that user input specify the frequency and amplitude of oscillation distinguishes claim 1 of the '081 patent from claim 1 of the '830 patent. The parties disagree as to what structure disclosed in the specification corresponds to the recited function.

1.    **User control of the frequency of oscillation requires the algorithm depicted in Figure 7B**

a.    **Performing the recited function requires each step in Samsung's construction**

The '081 patent explains that frequency and amplitude are controlled by variables "freq" and "strength," which respectively control outputs "d" and "p." '081 patent at Figs. 7A, 7C, 7:2-7, 7:13-18, 8:16-20. These outputs specify the claimed "frequency and [] amplitude" at which the moveable component is meant to oscillate. *Id.* Thus, the algorithm corresponding to the recited function requires using stored values for strength and frequency, i.e., the values set and stored in step 702. Claim 1 of the '081 patent requires causing oscillation <u>according to user-specified values for frequency and amplitude</u>. The structure of claim 1's "control component," i.e., the algorithm, corresponding to this function must, therefore, account for user input which affects the values of variables "freq" and "strength" to allow user control of the frequency and amplitude of oscillation. If the corresponding algorithm does not permit modifications to "freq" and "strength," the moveable component would only oscillate at the default frequency and amplitude and would not

15

oscillate at a frequency and amplitude specified by user input received through user-input features as claimed. Thus, at a high level, the "control component" recited in claim 1 of the '081 must be able to *change* the frequency and amplitude of oscillation according to user input, which is not required by claim 1 of the '830 patent.

The '081 patent discloses that the steps in Fig. 7C change the value of "strength." '081 patent at 8:10-22. Thus, these steps must be included in the construction. Likewise, the '081 patent describes only one way to change the value of "freq," which changes the frequency of oscillation. This change in the value of "freq" occurs in steps 740, 744, 748, and 752 shown in Figure 7B. Moreover, the algorithm shown in Fig. 7B requires that additional steps occur before steps 740, 744, 748, and 752 are reached, meaning they are required to perform the recited function. *Maxell Ltd.*, 297 F. Supp. 3d at 744 ("The algorithm that corresponds to the claimed function includes the entire algorithms of Figures 4 and 9."). In particular, to change the value of "freq," the algorithm first determines in step 710 that a "monitor timer expiration event" has occurred. '081 patent, Fig. 7A, 7:19-21. If such an event occurs, then a routine 'monitor' is called in step 712. *Id.* This "monitor" routine is described in Figure 7B. *Id.*, 7:32-33.

In the "monitor" routine, the control program first "converts sensor input to an integer representing the current vibrational force produced by the [vibration module] and stores the integer value in variable lvl1." '081 patent at 7:33-36. Next, the control program determines whether the vibration module is operating in a default mode in step 732, and if so, determines whether the variable "inc" (described as "a Boolean value that indicates that the frequency is currently being increased") is true in step 736. *Id.*, 6:60-61, 7:36-42, 7:50-54. Next, in steps 738, 742, 746, and 750, the integer stored in variable lvl1 is compared to the previously sensed vibrational strength, which is stored in variable lvl0 (the value of lvl1 is transferred to lvl0 at the end of the "monitor"

16

routine in step 754 (*id.*, 8:7-9)). *Id.*, 7:54-8:7. Depending on whether the variable "inc" is true, and whether lvl1 is greater than or less than lvl0, the control program increases or decreases the value of variable "freq" in steps 740, 744, 748, and 752. *Id.* Thus, to change the value of "freq" according to the '081 patent, the control program must first determine (1) if the vibration module is operating in default mode, (2) if the value of variable "inc" is true or false, and (3) if lvl1 is greater than or less than lvl0. Each of these steps (namely, all steps shown in Figure 7B excluding Step 734), therefore, are required to perform the recited function.

      **b.**     **Resonant's construction omits any way to change the frequency of oscillation**

Resonant's algorithm includes setting the "mode and strength" to selections made by the user, but omits the portion of the algorithm that actually accomplishes controlling the linear vibration module <u>according to the selected mode</u> (i.e., the "monitor" routine depicted in Figure 7B). Even if the user were to select a different mode,[7] Resonant's construction contains no steps that can change the value of "freq" or the interval of the frequency timer, meaning the frequency at which output "d" is flipped would also remain unchanged. '081 patent at 7:13-18. Thus, Resonant's construction cannot cause oscillation of the moveable component at a frequency specified by user input as required by the claimed function.

In sum, the '081 patent describes only one way to modify the value for "freq," namely, increasing or decreasing the value of "freq" based on whether the vibrational strength is increasing or decreasing. '081 patent, Fig. 7B, 7:50-8:7. Thus, to control oscillation of the moveable component at a frequency specified by user input, the algorithm must include steps that modify

---

[7] Notably, the '081 patent does not describe how to change frequency or otherwise change the value of "freq" in non-default modes, making the step of determining whether the current mode is "default" necessary to modify the value of "freq." '081 patent at 7:43-50 ("These more complex [i.e., non-default] modes are application dependent, and are not further described in the control-flow diagrams.").

the value for "freq." *WMS Gaming*, 184 F.3d at 1349; *Maxell Ltd.*, 297 F. Supp. 3d at 744 (rejecting the plaintiff's attempt to "pick and choose" steps of the algorithm and holding "[t]he algorithm that corresponds to the claimed function includes the entire algorithms of Figures 4 and 9.").

Thus, the corresponding structure for the "control component" recited in the '081 patent must include the algorithm for modifying the value of "freq" shown in Figures 7A and 7B as well as the algorithm for changing strength according to user input shown in Figure 7C, or the corresponding text in the specification. *See Williamson*, 792 F.3d at 1347.

### 2.    For the reasons the Court articulated in *Sony*, the control component must be located within the vibration module

For the '081 patent, Resonant asserts that the control component need not be located within the vibration module. Dkt. 99, 8. This is in contrast to the control component recited in claim 1 of the '830 patent, where Resonant's construction requires this feature. Dkt. 95-1, 20. Regardless, the Court previously held "that the 'control component' must be within the module for the '081 Patent's claims." Ex. 28 (*Sony* CC Order), 12-13, 15-16. As this Court held in *Sony*, during prosecution, Resonant "clearly and unmistakably characterized the 'system controller' and 'haptic interface' of [a cited reference] as 'separate units and not contained in a vibration module.'" *Id. See also* Ex. 20 at 78-79 (prosecution history). Because of this, the Court held that POSITAs would have understood that the claimed vibration module requires a control component that is *not* separate and *is* contained within the module, which is "consistent with the specification's description of the control component's location." *Id.*, 13. The Court also previously rejected the application of Resonant's cited case, *Oyster Optics*, finding this case more in line with *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340 (Fed. Cir. 2004). Ex. 28, 15.

Resonant's brief repeats the arguments it made in *Sony*. Dkt. 99, 8. Indeed, the single sentence Resonant devotes to arguing against disclaimer cites the very same case this Court

18

previously distinguished. *Id.,* 13-15 (citing *Oyster Optics, LLC v. Ciena Corp.*, No. 4:17-CV-05920-JSW, 2020 WL 13891311, at *8 (N.D. Cal. Aug. 10, 2020)). But this Court has already rejected Resonant's argument and Resonant has presented no reason to stray from this Court's previous decision. *Id.*, 11-13 (citing Ex. 20).

### 3. Resonant's focus on the number of steps is misguided

Resonant's suggestion that Samsung has "radically changed" its position is unfounded. Dkt. 99, 5. As discussed in section IV.D.1 above, Samsung's original brief stated that steps shown in Figs. 7A-7B are required to control frequency and that steps shown in Fig. 7C are required to control amplitude. Dkt. 74, 21-22. Samsung's construction for claim 1 of the '081 patent specifically identifies the necessary steps from Figs. 7A-7C in the same way the *Apple* court did. Because the specification discloses only one algorithm that can perform the claimed function, and that algorithm has 23 steps, the construction must include these steps. This was recognized by both the *Apple* court and the PTAB (in the Apple IPR) in their constructions.

### F. "wherein the control component receives output signals from sensors within the [linear] vibration module during operation of the [linear] vibration module and adjusts one or more operational control outputs of the control component according to the received output signals from the sensors" ('081 and '830 patents, claim 3)

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 U.S.C. § 112 ¶ 6. | Subject to 35 U.S.C. § 112 ¶ 6. |
| **Function**: receiving output signals from sensors within the [linear] vibration module during operation of the [linear] vibration module and adjusting one or more operational control outputs of the control component according to the received output signals from the sensors. | **Function**: Same as Resonant. |
| **Structures**: microprocessor or microcontroller 602; processor or CPU (*see, e.g.*, Fig. 7A steps 706, 708 and/or Fig. 7B steps 730, 736-754 and/or Fig. 7C Step 762); and equivalents thereof. | **Structure**: a microcontroller, a processor, a microprocessor, or a CPU contained within the vibration module that performs the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text. *See, e.g.*, '830 patent at 6:52-7:34, 7:42-7:52, 7:60-8:40, and equivalents thereof. |

Claim 3 adds additional functionality to each control component recited in claim 1 of the '830 and '081 patents. In particular, claim 3 adds the function of receiving output signals from sensors and adjusting operational control outputs of the control component according to the sensors' output signals. To perform this function, the corresponding structure for both patents must include the algorithm described in Figure 7B, except for step 734. Steps 730-732 and 736-754 describe the process by which value of "freq" is adjusted according to output signals from a sensor. Adjusting the value of "freq" changes the interval of the frequency timer, which changes the frequency at which output "d" is flipped. Thus, there can be no dispute that the steps in Figure 7B are required. *Nat'l Oilwell DHT, L.P. v. Amega W. Servs., LLC*, 2019 WL 1787250, at *8 (E.D. Tex. Apr. 24, 2019) ("The corresponding structure must be capable of performing the claimed function." (quotation omitted)).

The relationship between step 730, which "converts the sensor input to an integer representing the current vibrational force produced by the LRVM," and steps 740, 744, 748, and 752, which adjust the value of variable "freq," is described in section IV.E.1.a above. *See* '081 patent at 7:33-8:9. Once the control program adjusts the value of "freq" based on the sensor signal values, the control program returns to Figure 7A which includes performing each of steps 706-716. *Id.*, Figs. 7B (including a "return" block to return to Figure 7A), 7A.

In addition, the control program adjusts control output "p" in step 762 of Figure 7C based on the currently selected strength as determined in step 760. *Id.*, Fig. 7C, 8:11-20. Steps 760-764 are described in section IV.D.2.b above. The corresponding structure for both patents clearly links the claimed function to the steps described in Figures 7A-7C, namely the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text.

Samsung's construction should, therefore, be adopted.

Resonant may argue Samsung's identified corresponding structure for claim 1 of the '081 patent and claim 3 of both patents are identical, and suggest there is something improper about this approach. The law explains this approach is correct where the same structure corresponds to both functions. *Ironworks Pats. LLC v. Samsung Elecs. Co.*, 798 F. App'x 621, 628 (Fed. Cir. 2020) ("Indeed, an algorithm can support more than one function."). Here, the algorithmic structure disclosed in Figures 7A-7C is clearly linked to both the function recited in claim 1 of the '081 patent (because it provides the only disclosed algorithm for changing frequency and amplitude) and the function recited in claim 3 (because it adjusts one or more operational control outputs based on received output signals from sensors). Thus, this algorithm is necessary corresponding structure for both claim 1 of the '081 patent and claim 3 of both patents. *See Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 236 F.3d 1363, 1369 (Fed. Cir. 2001) (holding that construing means-plus-function element in independent claim to include structure recited in a dependent claim was correct because it was "necessary to perform" the function of the independent claim).

1.    **Resonant's "exemplary" steps fail to provide the jury with definitive guidance on the corresponding structure that performs the recited function**

Resonant's construction for claim 3 includes a list of steps from Figures 7A-7C as examples, but does not affirmatively state that these steps are required to perform the claimed function since they are listed after the phrase "see, e.g." This is not allowed. *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5896180, at *45 (E.D. Tex. Nov. 29, 2017) ("Plaintiff's contention that Figure 13 is 'one example' does not resolve the claim construction dispute, and fails to provide the jury with definitive guidance on the corresponding structure that performs the recited function."). Should Resonant argue these exemplary steps are optional, it would be legally incorrect. The Federal Circuit has consistently required that the

structure be more than simply a general purpose computer or microprocessor and that the specification must disclose an algorithm for performing the claimed function. *See, e.g.*, *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012).

Resonant's exemplary algorithm also incorrectly allows any combination of the steps it identifies, as it separates the steps in its list with "and/or." This is not only nonsensical in light of the disclosed algorithm, it is legally incorrect. The Federal Circuit has confirmed patentees may express an algorithm in any understandable manner, "so long as sufficient structure is disclosed." *In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011). Sufficient structure must "permit one of ordinary skill in the art to know and understand what structure corresponds to the means limitation so that he may perceive the bounds of the invention." *Id.*, 1298 (quotation omitted). By joining the steps with "and/or," Resonant makes it impossible for POSITAs to know the bounds of the invention. Are Figure 7A steps 706, 708 sufficient? Or Figure 7C step 762? Or perhaps just Figures 7A and 7B are sufficient? Under Resonant's construction POSITAs would not know. Since POSITAs would not know which steps are required, it would lead to the claim being found indefinite. *Id.* To avoid this outcome, Samsung's construction, which lists the necessary steps should be adopted. *Noah Sys.*, 675 F.3d at 1318 ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, we treat the specification as if no algorithm has been disclosed at all.").

### 2.     Resonant's algorithm is incomplete because it omits necessary steps and over-generalizes the specification

Even if each step in Resonant's list of exemplary steps is required, its algorithm is still incomplete in three key ways. First, it cherry-picks steps that are not performed in a vacuum. For example, Resonant's construction includes steps 730 and 736-754 in Fig. 7B and step 762 in Fig. 7C, but omits steps 710-716 in Fig. 7A, which must be performed to reach those steps. '081 patent

at Figure 7A, 7:19-24. As a result, Resonant's algorithm cannot perform the recited function. This is because the control program shown in Figure 7A would never call the "monitor" or "control" routines, and thus none of steps 730, 736-754 or 762 would be performed. *Id.*, 7:19-24.

Second, Resonant's construction generalizes the sensors' output to generic "values." The '081 and '830 patents do not disclose any way to compare generic "values." Instead the patents disclose a routine that "converts the sensor input *to an integer*" and compares that integer to another integer. *Id.*, 7:33-36, Fig. 7B. Resonant's construction is unsupported by the specification and therefore legally insufficient. *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1317 (Fed. Cir. 2010) ("Section 112 requires that the corresponding structure must be 'described in the specification.'" (quoting 35 U.S.C. § 112, ¶ 6)). In contrast, Samsung's construction accurately reflects the algorithm disclosed in the specification of the patents, namely converting the sensors' output to an integer (lvl1) and comparing that integer to the integer representing the previously sensed value (lvl0). '081 patent at Fig. 7B, 7:33-36, 7:57-8:9.

Separately, in the IPR proceedings, Resonant circumvented the prior art by arguing it failed to disclose converting the sensors' output to an integer and comparing that integer. Ex. 27 (*Samsung IPR* Patent Owner Response) at 30 ("But Ueda never mentions any integer, nor suggests that any of the values relied on by Samsung is an integer."). In the oral hearing, counsel for Resonant admitted the use of integers was necessary to avoid finding claims 3-6 unpatentable. Ex. 31 (*Samsung IPR* Oral Hearing Transcript) at 52:11-19 (admitting that using non-integer, generic values "would tend to support a construction or a conclusion that [the] claims are obvious."). The Board agreed with Resonant, finding claims 3-6 patentable. Ex. 23 at 90 ("We agree with Patent Owner that Ueda does not teach 'convert[ing] the received output signal into an integer.'" (quoting Ex. 27 at 30)). Finally, the PTAB agreed with Resonant that "converting to a 'digital value' does

not equate to converting to an 'integer.'" Ex. 23 at 92. In making its arguments, Resonant unequivocally and unambiguously disavowed using generic, non-integer values to perform the claimed function. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013); *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) (extending prosecution disclaimer to "statements made by a patent owner during an IPR proceeding"). Resonant cannot now reclaim that disavowed subject matter. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).

Third, Resonant's construction misrepresents the patents' disclosure by allowing for comparison to a "different value" as opposed to the previously sensed value as actually disclosed in the '081 and '830 patents.[8] The patents disclose comparing "lvl1," which is an integer, with "lvl0," which is the previous integer value that was stored in variable lvl1. '081 patent at 6:55-57, 7:33-37, 8:7-9 ("the value in lvl1 is transferred to lvl0…"). The patents' do not disclose comparing a sensed value to anything but the previously sensed value. Thus, contrary to Resonant's construction, the claim must be limited in this way. *Pressure Products*, 599 F.3d at 1317.

**G.** **"wherein the control component adjusts the one or more operational control outputs of the control component according to the received output signals from the sensors in order that subsequent operation of the [linear] vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters" ('081 and '830 patents, claim 4)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 U.S.C. § 112 ¶ 6. | Subject to 35 U.S.C. § 112 ¶ 6. |
| **Function**: adjusting the one or more operational control outputs of the control component according to the | **Function**: adjusting the one or more operational control outputs of the control component according to the received output signals from the sensors in order that |

---

[8] Resonant's carve out, that the "different value" "could be a previous value" does not save its proposal. "Congress has struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed," as Resonant has done with claim 3. *Williamson*, 792 F.3d at 1347-48. In exchange, the scope of coverage of the claim is restricted "to only the structure, materials, or acts described in the specification as corresponding to the claimed function." *Id.* Resonant's construction goes far beyond this restriction.

| | |
|---|---|
| received output signals from the sensors in order that subsequent operation of the [linear] vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters<br><br>**Structures**: microprocessor or microcontroller 602; processor or CPU (*see, e.g.*, Fig. 7A steps 706, 708 and/or Fig. 7B steps 730, 736-754 and/or Fig. 7C Step 762); and equivalents thereof. | subsequent operation of the [linear] vibration module produces desired outputs from the one or more sensors corresponding to one or more operational control parameters<br><br>**Structure**: A microcontroller, a processor, a microprocessor, or a CPU contained within the vibration module that performs the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text. *See, e.g.*, '830 patent at 6:52-7:34, 7:42-7:52, 7:60-8:40, and equivalents thereof. |

Even if the Court were to modify claim 4 to depend from claim 3 (which it should not do for the reasons discussed in Section IV.B above), Resonant's construction of the "control component" of claim 4 is wrong for the same reasons as claim 3. *See* Sections IV.D-F above.

**H.    "wherein the one or more operational control parameters is a strength of vibration produced by the [linear] oscillation of the moveable component; and wherein the one or more operational control outputs is a frequency at which the control component drives the moveable component to [linearly] oscillate, the control component dynamically adjusting the power supplied to the driving component to produce [linear] oscillation of the movable component at a resonant frequency for the linear vibration module" ('081 and '830 patents, claim 5)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Subject to 35 U.S.C. § 112 ¶ 6. | Subject to 35 U.S.C. § 112 ¶ 6. |
| **Function**: dynamically adjusting the power supplied to the driving component to produce [linear] oscillation of the movable component at a resonant frequency for the [linear] vibration module<br><br>**Corresponding structures**: oscillator circuit; microcontroller with internal or external memory; processor; CPU; microprocessor; and equivalents thereof<br><br>[if an algorithm is required] Where the corresponding structure is a processor, CPU, or microprocessor, the processor/CPU/microprocessor is programmed with an algorithm comprising the following steps: (a) if the frequency at which the device operates has been increasing and the vibrational force is greater than the previously | **Function**: Claim 4 function wherein the one or more operational control parameters is a strength of vibration produced by the [linear] oscillation of the moveable component; and wherein the one or more operational control outputs is a frequency at which the control component drives the moveable component to [linearly] oscillate, the control component dynamically adjusting the power supplied to the driving component to produce [linear] oscillation of the movable component at a resonant frequency for the [linear] vibration module.<br><br>**Structure**: A microcontroller, a processor, a microprocessor, or a CPU contained |

| | |
|---|---|
| sensed vibrational force, then increase the frequency—otherwise decrease the frequency; and (b) if the frequency at which the device operates has not been increasing and the vibrational force is greater than the previously sensed vibrational force, then decrease the frequency—otherwise increase the frequency<br><br>*See, e.g.*, '081 patent at 7:38-42, 7:50-8:9, Fig. 7B; '830 patent at 7:48-52, 7:60-8:19, Fig. 7B | within the vibration module that performs the algorithm shown in Figure 7A excluding steps 718-724, with reference to all steps shown in Figure 7B excluding Step 734, and all steps shown in Figure 7C, or the algorithm described in the corresponding text. *See, e.g.*, '830 patent at 6:52-7:34, 7:42-7:52, 7:60-8:40, and equivalents thereof. |

### 1.    The function includes the "wherein" clauses of claim 5

Resonant's construction improperly truncates the function and corresponding algorithm. Claim 5 depends on claim 4 and thus incorporates its limitations, including a "control component" that performs claim 4's function with the corresponding structure discussed above in Section IV.G. The "wherein" clauses of claim 5 modifies the "one or more operational control parameters" and the "one or more operational control outputs," which are terms appearing in claim 4. Thus, in claim 5, the function of the control component is modified to incorporate additional functionality. Forlines Decl. ¶¶ 144-145.

Resonant asserts that claim 5's "wherein" clauses do not modify the function of the "control component." Dkt. 69, 26-27. Resonant misunderstands claim 5's structure and the law. Courts routinely incorporate a "wherein" clause into the function when the clause modifies an aspect of the function. *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-CV-00316-JRG, 2022 WL 3686478, at *10 (E.D. Tex. Aug. 24, 2022).

### 2.    Resonant's algorithm omits necessary steps

Both Parties' algorithms require determining whether "the frequency at which the device operates has been increasing and the vibrational force is greater than the previously sensed vibrational force." But Samsung requires the steps disclosed in the specification (i.e., steps 736, 738, 742, 746, and 750) that enable the "control component" to make these determinations.

Samsung's algorithm requires that the "control component" "stor[es] sensor input representing the current vibrational force in a variable" in step 730 and "check[s] a previously set variable to determine if the rate of oscillation of the movable component is increasing" in step 736. '081 patent, 7:33-36, 7:50-57, Fig. 7B. These steps correspond to the function recited in claim 5 because they enable the "control component" to determine if the rate of oscillation and vibrational forces are increasing or decreasing, which is necessary to perform the function. Forlines Decl. ¶ 149. Resonant's claim that these steps are not necessary is conclusory. Dkt. 69, 28.

I.    **"wherein the one or more operational control parameters include both a strength of vibration produced by the linear oscillation of the moveable component and a current operational mode; and wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to [linearly] oscillate" ('081 and '830 patents, claim 6)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning; not subject to 35 U.S.C. § 112 ¶ 6.<br><br>If subject to 35 U.S.C. § 112 ¶ 6 and Samsung's function is accepted, then:<br><br>**Structures**: oscillator circuit; microcontroller with internal or external memory; processor; CPU; microprocessor; and equivalents thereof<br><br>[if an algorithm is required] Where the corresponding structure is a processor, CPU, or microprocessor, the processor/CPU/microprocessor is programmed with an algorithm comprising the following steps: (a) set the mode and strength to [default values or] values representing selections made by user input to the user input features; and (b) provide a corresponding output to the power supply so that the power supply provides a corresponding current to the driving component<br><br>*See, e.g.*, '081 patent at 7:10-24, 8:10-20, Figs. | Subject to 35 U.S.C. § 112 ¶ 6.<br><br>**Function**: Claim 4 function wherein the one or more operational control parameters include both a strength of vibration produced by the [linear] oscillation of the moveable component and a current operational mode; and wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to [linearly] oscillate.<br><br>**Structure**: Indefinite. |

1.    **Claim 6's "wherein" clauses modify claim 4's recited function**

Claim 6 depends on claim 4 and thus incorporates its limitations, including a "control component" that performs claim 4's function with the corresponding structure discussed above in

27

Section IV.G. *Finesse Wireless*, 2022 WL 3686478 at *10. Claim 6's "wherein" clauses modify claim 4's "one or more operational control parameters" and "one or more operational control outputs." Thus, claim 6 modifies claim 4's control component's function to incorporate these further limitations. Forlines Decl. ¶¶ 156-157.

The resulting function recited in claim 6 involves "adjusting the one or more operational control outputs of the control component according to the received output signals from the sensors," from claim 4, "wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component," from claim 6. Resonant cannot identify corresponding structure for this function because none is disclosed, rendering claim 6 indefinite. *See, e.g.*, *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1375 (Fed. Cir. 2015).

### 2. The Asserted Patents do not disclose corresponding structure for adjusting a control output that determines a current based on sensors' output signals

The patents disclose no algorithm for adjusting an operational control output according to output signals from sensors wherein one of the operational control outputs is a "control output that determines a current supplied by the power supply to the driving component." At most, the patents disclose adjusting a *frequency* according to the vibrational force measured by sensors. '081 patent, 7:13-18, 7:32-8:9, Figs. 7A, 7B. But POSITAs would not have understood the patents to disclose an algorithm for adjusting a "control output that determines a current supplied by the power supply to the driving component" according to the vibrational force measured by sensors. Forlines Decl. ¶ 163. The control program "outputs the value p to the power supply so that the power supply outputs an appropriate current to the coil." '081 patent, 8:16-20. But the patents disclose adjusting "p" (i.e., current) **according to user input—not output signals from sensors as claimed**. *Id.* ("the routine 'control' computes an output value p corresponding to the currently selected strength

… represented by the current states of control features in the user interface.").

Resonant's algorithm does not mention sensor output and does not describe a control output that both determines a current supplied by the power supply to the driving component and is adjusted according to output signals from sensors. Forlines Decl. ¶ 162. Resonant's construction is, therefore, legally insufficient. *Nat'l Oilwell*, 2019 WL 1787250 at *8.

**J.** **"wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and a frequency at which the control component drives the moveable component to [linearly] oscillate" ('081 and '830 patents, claim 6)**

| Resonant's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning; not indefinite | "wherein the one or more operational control outputs is a control output that determines a current supplied by the power supply to the driving component and **is** a frequency at which the control component drives the moveable component to [linearly] oscillate" |

If the Court finds claim 6 is not indefinite, the claim should be construed according to the proper grammatical read of the claim. Samsung's construction clarifies that the "one or more operational control outputs" include two control outputs: (1) a control output that determines a current supplied by the power supply to the driving component; and (2) a control output that is a frequency. Resonant contends that the claim is met by a single operational control output that determines both current and frequency. Dkt. 69, 9.

In isolation, the language of claim 6 is ambiguous and could be read to refer to a control output that determines both current and frequency. However, the language could also be read to require two control outputs—one that determines a current and one that is a frequency. In such an instance, the specification is used to resolve the uncertainty. *World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123-24 (Fed. Cir. 2014).

The specification does not disclose a single control output value that determines both current and frequency (Resonant's Construction). In contrast, the specification discloses two

29

separate operational control outputs, one that determines the current supplied by the power supply and another that is a frequency (Samsung's Construction). In particular, at step 702 of Figure 7A, the system initiates as separate variables/values "strength" and "freq." *See* '081 patent, 6:47-61. The variable "strength" corresponds "to the electrical current applied to the coil," while the variable "freq" is "the current frequency at which the direction of current is alternated in the coil." *Id.* These control outputs are adjusted and outputted separately, as shown in step 762 of Figure 7C and described at 8:16-20 (showing output "p" to the power supply, which corresponds "to the currently selected strength, stored in the variable strength") and Figures 7A and 7B, described at 7:13-18, 7:33-8:9 (showing control of frequency through the "freq" variable and "output d"). The value of "strength" cannot be used to "determine" the frequency; frequency is its own control output. Accordingly, Resonant's single-output construction lacks any written description support.

Finally, contrary to Resonant's argument, claim 5 supports Samsung's construction because it is plausible that the applicants meant to claim one of the signals (frequency) in claim 5 and both signals (current/strength and frequency) in claim 6. *See Estech Sys. IP, LLC v. Carvana LLC*, No. 2-21-CV-00482-JRG-RSP, 2023 WL 3681720, at *5 (E.D. Tex. Jan. 30, 2023).

## V.    RESONANT'S CITATIONS TO SAMSUNG'S IPRS ARE UNAVAILING

Resonant suggests Samsung's claim 6 IPR position undermines its construction. Dkt. 69, 30. But different positions taken in an IPR related to indefinite terms are unpersuasive "because an IPR petition cannot assert indefiniteness." Ex. 32 (*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:22-CV-00282-JRG, Dkt. 176 (E.D. Tex. Oct. 14, 2023)) at 25.

## VI.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests the Court adopt its constructions.

Dated: May 8, 2025

Respectfully submitted,

/s/ *Jeffrey A. Miller*
Jeffrey A. Miller (pro hac vice pending)
jeffrey.miller@arnoldporter.com
**ARNOLD & PORTER KAYE
SCHOLER LLP**
3000 El Camino Real
5 Palo Alto Square, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Andrew T. ("Tom") Gorham
Texas Bar No. 24012715
tom@gillamsmithlaw.com
**GILLAM & SMITH LLP**
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

Jin-Suk Park
jin.park@arnoldporter.com
**ARNOLD & PORTER KAYE
SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5000
Facsimile:  (202) 942-5555

Daniel S. Shimell
Daniel.shimell@arnoldporter.com
**ARNOLD & PORTER KAY
SCHOLER LLP**
777 South Figueroa Street, 44th Floor

31

Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile:  (213) 243-4199

***Attorneys for Defendants***
***Samsung Electronics Co., Ltd. and***
***Samsung Electronics America, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on May 8, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*

_____

Melissa R. Smith